**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERIC MALON, | : | |
| | : | DKT No.: 3:24-cv-1052 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FOTI KOSKINAS, in his individual capacity only; RYAN PAULSSON, in his individual capacity only; ERIN SHAW, in her individual capacity only; ALBERT NOWINSKI, in his individual capacity only; MARC HEINMILLER, in his individual capacity only; JAMES BAKER III, in his individual capacity only; PHILIP RESTIERI, in his individual capacity only; Officer [First Name Unknown] SULLIVAN, in his/her individual capacity only; ERIC WOODS, in his individual capacity only; Officer [First Name Unknown] TAYLOR, in his/her individual capacity only; Officer [First Name Unknown] FIELD, in his/her individual capacity only; NICHOLAS OLIVETTI, in his/her individual capacity only; MICHAEL MENCACCI, in his individual capacity only; RYAN FRECHETTE, in his individual capacity only; UNKNOWN STATE TROOPER #1, in his/her individual capacity only; UNKNOWN STATE TROOPER #2, in his/her individual capacity only; UNKNOWN STATE TROOPER #3, in his/her individual capacity only; UNKNOWN STATE'S ATTORNEY, in his/her individual capacity only; JOHN L'ORIO, in his/her individual capacity only, TOWN OF WESTPORT | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : | June 14, 2024 |

1

**COMPLAINT**

1.      June 17, 2021 was the worst day of Eric Malon's life. His estranged partner, Tracy Chinh Do, drowned his seven-year-old daughter, Layla Malon, in their Westport home's bathtub and then committed suicide. Do's body was discovered by his then-thirteen-year-old daughter when she returned from school.

2.      Members of the Westport Police Department, the Connecticut State Police, and a State's Attorney then turned the worst possible tragedy that a father can suffer into a hellish nightmare by preying on Malon's emotional vulnerability and grief to escalate the situation, physically assaulting him under the pretense of securing evidence that Malon had already explained he was willing to give, obtaining a search warrant under a falsified presentation of facts to cover up their own conduct, detaining him for hours, and keeping him separate from his remaining daughter for the critical hours of grief where they needed each other the most.

3.      The gravamen of this unconscionable behavior? Detectives demanded that Malon give them his phone so they could rule him out as a suspect in his daughter and estranged partner's deaths. Malon refused because his phone had pictures of his daughter and everything he needed for work as a self-employed contractor, and he did not expect to ever see his phone again. Despite Malon asking to wait for his attorney to arrive, police continued to push Malon for his phone – while he was sitting in his van crying over his daughter's death no less – attempting to coerce Malon by threats until he demanded that they get out of his face and used a colorful variety of other profanity toward the officers.

4.    The officers had no probable cause to suspect Malon in the deaths of his estranged partner and daughter, and their actions were retaliation for a grieving man's outburst. And they told him as much too. Upon information and belief, their most outrageous hits included the following:

   a.  "I kept telling you to relax and you kept telling us to fuck off and walk away so now you're going in cuffs."

   b.  "We'll take them off [the cuffs], but you gotta work with us."

   c.  "You were given the option before that we could take it [Malon's phone], download it, and give it back to you. That option is now gone."

5.    Even though Malon was never charged for the incident and responding police and first responders and the Connecticut Medical Examiner quickly ruled the incident a murder-suicide, Westport Police Chief Foti Koskinas and his subordinates continues to retaliate against Malon for his speech during the worst situation of his life, delaying and denying his application for a pistol permit for over two years by accusing him of lying on his permit application and declining to accept a corrected application.

6.    The past three years have broken Malon's heart, subjected him to indignity after indignity, and yielded violation after violation of his constitutional rights. Malon now seeks redress for his injuries, bringing claims for First Amendment retaliation, Fourth Amendment violations, due process violations, and numerous state law tort claims.

## PARTIES

7.    Plaintiff Eric Malon is a Connecticut resident and self-employed carpenter who maintains his home in Westport, Connecticut.

3

8.     Defendant Foti Koskinas is the Town of Westport's Police Chief, and he is sued in his individual capacity only.

9.     Defendant Ryan Paulsson is a Westport police officer, and he is sued in his individual capacity only.

10.     Defendant Erin Shaw is a Westport police officer, and she is sued in her individual capacity only.

11.     Defendant Albert Nowinski is a Westport police officer, and she is sued in her individual capacity only.

12.     Defendant Marc Heinmiller is a Westport police officer, and he is sued in his individual capacity only.

13.     Defendant James Baker, III, is a Westport police officer, and he is sued in his individual capacity only.

14.     Defendant Eric Woods is a Westport police officer, and he is sued in his individual capacity only.

15.     Defendant Officer [First Name Unknown] Sullivan is a Westport police officer whose full name is unknown to Malon at this time, but, whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. Officer Sullivan is sued in his/her individual capacity only.

16.     Defendant Officer [First Name Unknown] Taylor is a Westport police officer whose full name is unknown to Malon at this time, but, whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. Officer Taylor is sued in his/her individual capacity only.

4

17.     Defendant Officer [First Name Unknown] Field is a Westport police officer whose full name is unknown to Malon at this time, but, whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. Officer Field is sued in his/her individual capacity only.

18.     Defendant Officer Nicholas Olivetti is a Connecticut state trooper and is sued in his individual capacity only.

19.     Defendant Michael Mencacci is a Connecticut state trooper and is sued in his individual capacity only.

20.     Defendant Ryan Frechette is a Connecticut state trooper and is issued in his individual capacity only.

21.     Defendant Unknown State Trooper #1 is a Connecticut state trooper whose name is unknown to Malon at this time, but, whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. He/she is sued in his/her individual capacity only.

22.     Defendant Unknown State Trooper #2 is a Connecticut state trooper whose name is unknown to Malon at this time, but, whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. He/she is sued in his/her individual capacity only.

23.     Defendant Unknown State Trooper #3 is a Connecticut state trooper whose name is unknown to Malon at this time, but whom, upon information and belief, participated in the unlawful seizure, search, and/or false imprisonment of Eric Malon on June 17, 2021. He/she is sued in his/her individual capacity only.

24.   Defendant Unknown State's Attorney is the prosecutor whom the Defendants, other members of Westport Police, and other members of the Connecticut State Police contacted for authorization on whether to physically seize Malon, his cellphone, and his van. Upon information and belief, Defendant Unknown State's Attorney's conduct transcended that of an attorney giving legal advice, but rather took on the role of a general commanding troops on the battlefield. Upon information and belief, Defendant Unknown State's Attorney gave the authorization and the order to physically seize Malon, his cellphone, and his van. Upon information and belief, Defendant Unknown State's Attorney then supervised the preparation of white-washed warrant applications to search Malon's phone to justify, ex post facto, the warrantless seizure of Malon and his cell phone. He/she is sued in his/her individual capacity only.

25.   Defendant John L'Orio is a Westport police officer and is sued in his individual capacity only.

26.   The Town of Westport is a municipal corporation incorporated under the laws of Connecticut. It operates all of the departments usually associated with a municipal government, including a police department.

## JURISDICTION

27.   The Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. § 1983 because it presents a federal question. The Court also has jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

28.   Venue is appropriate under 28 U.S.C. § 1391 because all of the events giving rise to this action occurred with the Court's jurisdiction.

## FACTUAL ALLEGATIONS

### *Context & Tragedy.*

29.    Eric Malon is a self-employed carpenter who has done fairly well for himself in life. He owned a home in Westport where, at the time of June 17, 2021, his estranged partner, Tracy Chinh Do, and their children lived with him.

30.    Malon's relationship with Do was rocky. He repeatedly sought to get her mental health treatment and even took steps to involve the Connecticut Department of Children and Families and evict her from the home because of her instability and dangerous treatment of their children.

31.    On June 17, 2021, Do did the unthinkable, drowned her seven-year-old daughter in a bath tub, and then committed suicide.

32.    Malon and Do's thirteen-year-old daughter discovered her mother's dead body when she returned from school and called 9-1-1.

33.    Westport police and first responders arrived and helped Malon's thirteen-year-old daughter out of the residence and then contacted the Connecticut State Police to send their major crimes unit to take control of the investigation.

34.    Westport police, however, had already concluded before Connecticut State Police had arrived that the tragedy was a murder-suicide with Do being responsible for both.

### *Malon's Arrival & Treatment.*

35.    From the start, Westport Police delayed in notifying Eric Malon of the tragedy that had occurred at his home. Despite knowing his cellphone number, Defendant

7

Woods attempted to stall notification of Malon until the Connecticut State Police had arrived.

36.    Malon, however, had noticed the unusual emergency and police presence at his property through his Google Nest security system, which he could access on his cellphone. He immediately left work and returned home in his red work van.

37.    Upon Malon's arrival, Defendant Woods informed Malon that Do was deceased, and Malon immediately demanded to see his daughter who he immediately walked to. When he returned to Defendant Woods, Woods informed him that Layla Malon was deceased as well.

38.    At this juncture, Defendant Woods turned Malon over to Defendant Nowinski, briefed the Connecticut state police, and returned to the Westport police station to supervise the parts of the case occurring there.

39.    At no point in their investigation did any of the Defendants,[1] the Westport Police, or the Connecticut State Police observe anything that would connect Eric Malon to the murder of his daughter and his estranged partner's suicide. Upon information and belief, prior to any subsequent events described herein, the Defendants, the Westport Police, and the Connecticut State Police had already found a suicide note authored by Do.

40.    For some reason though, the Defendants, the Westport Police, and the Connecticut State Police decided that they needed to search Eric Malon's phone to rule

---

[1] As used in this section, the term "Defendants" includes all Defendants except Defendants Koskinas, Unknown State's Attorney, and Orio. To the extent that those Defendants are involved in any of the allegations in this section, their involvement will be described specifically.

him out as a possible suspect. In reaching this conclusion, they did not have any suspicion, let alone a particularized suspicion, that Malon had committed any crimes, was involved in the murder-suicide in any way, or that any evidence connecting him to a crime would be found on his phone.

41. The Defendants, the Westport Police, and the Connecticut State Police then approached Malon and asked him if they could search his phone to rule him out as a suspect.

42. Malon invoked the assistance of counsel, who was on her way to the scene or started to come shortly thereafter, because the devastating nature of the travesty and his grief was starting to overwhelm him. Malon then indicated that he would be willing to consent to a search of his phone if they could do it that same day and then return it to him immediately.

43. Instead of waiting for counsel at this point and without detaining Malon at this point, the Defendants, the Westport Police, and the Connecticut State Police presented Malon with an "easy way or the hard way" choice.

    a. The "easy way" was to surrender his phone with no guarantees of when it could be returned to him.

    b. The "hard way" was for them to get a search warrant for his phone.

44. Malon repeatedly told the Defendants, the Westport Police, and the Connecticut State Police that he would consent to the search of his phone as well as his Google Nest security camera footage, but that he did not want to consent if it meant that he would lose his phone for an extended period of time.

9

45.     Speaking directly from his grief, Malon informed them that his phone had his life on it – pictures of his now-deceased daughter, all of the information necessary for his business, etc. Upon information and belief, he proposed that he go to the Westport Police Department once his attorney arrived and allow them to download the entirety of his phone so they could return his phone to him that same day.

46.     The Defendants, the Westport Police, and the Connecticut State Police were extremely unsatisfied with Malon's answers, and they began to threaten him about what they would do if he did not immediately turn over his phone – all the while he was sitting in his van crying in his grief and trying to contact family and friends for emotional support. At no point though did they arrest him or detain him.

47.     Malon's grief manifested itself verbally when the Defendants, the Westport Police, and the Connecticut State Police continued to threaten and pressure him. He told them to "fuck off" and to get out of his face. He begged them to leave them alone in his grief, saying "Just get out of my face for a minute." He asked for space to process this tragedy.

48.     His pleas were to no avail though. The more he begged for mercy and forbearance in his hour of grief, the more the Defendants, the Westport Police, and the Connecticut State Police threatened him.

49.      Their hounding drove Malon nigh insane in his grief. He yelled at them "to get the fuck out of my face" and called one of the Defendants a "fucking cocksucker."

50.     Despite acknowledging that they understood Malon's grief and stress, the Defendants, the Westport Police, and the Connecticut State Police escalated the situation because of Malon's speech and assertion of his rights despite having no reason to

10

suspect him of being involved in any crime or that evidence of a crime could be found on his cellphone. Nor did they have any reason to believe that Malon would attempt to destroy potential evidence since he had already explained that he was willing to provide his phone to them for a search in such a manner as to not require them to hold it for an extended period of time.

51.    With the Defendants, the Westport Police, and the Connecticut State police refusing to give Malon time to process his grief, Malon attempted to walk away to gain space to compose himself.

52.    Instead of giving Malon space, the Defendants then insisted that he remain put to subject himself to more of their abuse even though they were not detaining him or arresting him. When Malon did not, they responded with: "You're gonna go in handcuffs in two seconds if you keep doing what you're doing."

53.    When Malon still sought space to grieve, at least four of the Defendants seized him by force and placed him in handcuffs despite having no reasonable basis to do so. Instead, they confirmed that their actions were motivated, at least in part, by his speech: "I kept telling you to relax and you kept telling us to fuck off and walk away so now you're going in cuffs."

54.    Once they had seized Malon and while he was still in handcuffs, the Defendants then sought to coerce him to consent to a seizure and search of his cellphone: "We'll take them [the cuffs] off, but you gotta work with us" and "is it ok if we take your phone first?"

11

55.    Malon stuck to his guns despite this outrageous treatment and refused to consent to the seizure and search of his phone: "No, I will come down to the station… with my attorney."

56.    Initially, the Defendants thought better of their handcuffing of Malon and planned to release him: "Fair enough. We'll take the cuffs off you now, but you gotta relax."

57.    Before doing so though, the Defendants consulted with Defendant Unknown State's Attorney who instructed them to keep Malon in handcuffs and custody until they could get a search and seizure warrant: "The route we have to go now – we have to go now – is we're gonna get a search warrant for the phone to take it out of your pocket" and "I'm not negotiating with you… you're staying detained, per the State's Attorney 'til we get a search warrant for your person to take the phone out of your pocket. You were given the option before that. We could take it, download it, and give it back to you. That option is now gone."

58.    In making this instruction, Defendant Unknown State's Attorney went beyond the bounds of an attorney giving legal advice and turned into a commander giving orders to the Defendants as they themselves acknowledged through their statements claiming that they were now operating according to the direction of Defendant Unknown State's Attorney.

59.    The Defendants then transported Malon to the Westport Police station, subjected him to the indignity of a full body search, confiscated all of his property under the guise of an inventory search, and placed him in a holding cell.

12

60. The Defendants then subjected Malon to an interrogation and seized his cellphone and his clothes pursuant to a search and seizure warrant that they collectively prepared under the supervision of Defendant Unknown State's Attorney and submitted to Connecticut Superior Court Judge Gary White.

61. In total, Malon spent five to six hours in the custody of the Defendants before being released.

62. Concurrent or subsequent to this, the Defendants then seized and towed Malon's red work van to the Westport police impound lot despite having no reason to suspect that it was involved in any crime or contained evidence of any crime. While they prepared a search and seizure warrant for the van, they never had it signed by a judge.

63. Malon was never charged with a crime for the June 17, 2021 murder-suicide or his actions or speech that day.

### *The Defendants' Further Treatment Of Malon*

64. Under the auspices of a *Mincey* warrant, the Defendants ransacked Malon's house in their investigation of the June 17, 2021 murder-suicide.

65. When they could not access his safes, they contacted him to demand the combinations and threatened to smash the safes open if he did not provide the combinations. Malon provided the combinations and would have provided them without the threats.

66. After the Defendants finished their investigation, Malon returned to find his home a mess. He also found that numerous personal possessions were missing, and he has not gotten them back to this day.

13

67.    Upon information and belief, approximately $15,000 in cash went missing from Malon's safe as well as a chain that Malon bought himself for his 30th birthday (valued at $6,000). The Defendants failed to document either the cash or the chain on any inventory of their search of his house.

68.    Malon has never recovered the cash or the chain, nor have they been returned by the Defendants.

69.    Upon information and belief, the Defendants took no steps to secure Malon's house once they were done with their investigation. They left the doors unlocked and the premises unguarded until he returned and secured his own property.

### *Malon Faces Further Retaliation.*

70.    Upon information and belief, after the June 17, 2021 murder-suicide, numerous individuals sent messages to the Connecticut Medical Examiner's Office, the Connecticut State Police, and the Westport Police Department demanding that they investigate Malon for murder and blaming them for closing their investigation too early.

71.    When Malon was informed of these messages, he feared for his safety and that of his remaining daughter.

72.    He subsequently applied for a pistol permit through the process established by Connecticut law by submitting an application to the Westport Police Department for one.

73.    When he did so and to this date, Malon meets all requirements to lawfully purchase, possess, and carry firearms under federal and state law.

74.     Upon information and belief, Defendant Koskinas repeatedly delayed Malon's pistol permit process for various pretextual reasons, including that Malon had not spent enough time in therapy and that he needed to let more time pass.

75.     When Malon began to press Koskinas and the Westport Police Department over his treatment of him, Defendant John L'Orio accused Malon of lying on his application form without conducting any sort of investigation as to whether Malon made an accidental mistake or not.

76.     When Malon attempted to submit a second application for a pistol permit to correct his alleged errors, Defendants Koskinas and L'Orio refused to accept it despite being required to do so under Connecticut law.

77.     To this day, Malon still has not received the pistol permit from Defendant Koskinas that he needs to obtain his Connecticut state pistol permit, and he has never been charged or sanctioned for any alleged error on a pistol permit application.

78.     Upon information and belief, Defendants Koskinas and L'Orio have delayed the issuance of Malon's pistol permit as retaliation for his speech and assertion of his rights on June 17, 2021.

### COUNT ONE – RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANT TOWN OF WESTPORT

79.     Paragraphs 1 through 78 are incorporated herein.

80.     All of the speech that Eric Malon uttered on June 17, 2021 was constitutionally protected speech.

81.     The Defendants retaliated against Malon for his speech by forcibly and physically seizing him, presenting fabricated warrants to a Connecticut Superior Court

judge in an effort to obtain authorization for their intended searches of him and his property, subjecting him to a physical search, imprisoning him for hours, and seizing his property.

82.     Defendants Koskinas and L'Orio retaliated, and are continuing to retaliate, against Malon for his speech by delaying and denying the issuance of his pistol permit.

83.     The Defendants' actions violate Malon's right to free speech under the First Amendment.

## COUNT TWO – *MONELL* CLAIM FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. 1983) AGAINST DEFENDANT TOWN OF WESTPORT

84.     Paragraphs 1 through 83 are incorporated herein.

85.     The Defendants retaliated against Malon for his speech by forcibly and physically seizing him, presenting fabricated warrants to a Connecticut Superior Court judge in an effort to obtain authorization for their intended searches of him and his property, subjecting him to a physical search, imprisoning him for hours, and seizing his property.

86.     At all times, the named Defendant Westport Police Officers participated in these actions under color of state law and Town of Westport policy, customs, and/or practices.

87.     The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to label every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect.

88.     Defendant Koskinas – as chief of the Westport Police Department – is the final authority responsible for supervising and/or establishing these policies, customs,

and/or practices and has approved the policy, custom, and/or practice of labeling every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect.

89.    The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to escalate a situation where a person interacting with the police uses profanity toward officers and tells them to leave because it allegedly provides an independent basis to suspect them of being involved in a crime.

90.    This policy, custom, and/or practice does not take into account any other reasons why a person might utter such speech or whether all of the evidence available to Westport Police officers shows that a person is not involved in a crime.

91.    Acting under the color of the Town of Westport's policies, customs, and/or practices, the named Defendant Westport Police officers retaliated against Malon for his speech directed at them with no regard for the fact that it was constitutionally protected. Their actions violated Malon's First Amendment rights.

92.    The Town of Westport failed to provide adequate and appropriate training to its police officers on how profane speech is constitutionally protected even when directed at police officers and may not form an independent basis to escalate a situation and forcibly seize a person.

93.    Acting under and in continuation of this Town of Westport policy, custom, and/or practice, Defendants Koskinas and L'Orio retaliated against Malon for his speech directed months prior to their fellow officers by denying him a pistol permit, making false

17

accusations that he had lied on his pistol permit application, and refusing to process a corrected pistol permit application. Their actions violated Malon's First Amendment rights.

94.   The Town of Westport failed to provide adequate and appropriate training to Defendants Koskinas and L'Orio on how profane speech is constitutionally protected even when directed at police officers and may not form the basis to deny someone the exercise of their Second Amendment rights.

**COUNT THREE – UNLAWFUL SEIZURE OF ERIC MALON IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.**

95.   Paragraphs 1 through 94 are incorporated herein.

96.   The Defendants physically seized Malon within the meaning of the Fourth Amendment without a warrant.

97.   The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

98.   The Defendants told Malon that the reason that they seized him was because of his constitutionally protected speech, which cannot serve as the basis for a lawful seizure under the Fourth Amendment.

99.   Upon information and belief, the Defendants never obtained a warrant prior to seizing Malon.

100.   The Defendants then imprisoned Malon for hours.

101.   The Defendants' actions violated Malon's Fourth Amendment right to be free from unlawful seizures.

**COUNT FOUR – *MONELL* CLAIM FOR UNLAWFUL SEIZURE OF ERIC MALON IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST DEFENDANT TOWN OF WESTPORT**

102.    Paragraphs 1 through 101 are incorporated herein.

103.    The Defendants physically seized Malon within the meaning of the Fourth Amendment without a warrant.

104.    The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

105.    The Defendants told Malon that the reason that they seized him was because of his constitutionally protected speech, which cannot serve as the basis for a lawful seizure under the Fourth Amendment.

106.    Upon information and belief, the Defendants never obtained a warrant prior to seizing Malon.

107.    The Defendants then imprisoned Malon for hours.

108.    At all times, the named Defendant Westport Police Officers participated in these actions under color of state law and Town of Westport policy, customs, and/or practices.

109.    The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to label every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect. Their actions violated Malon's Fourth Amendment rights.

110.    Defendant Koskinas – as chief of the Westport Police Department – is the final authority responsible for supervising and/or establishing these policies, customs,

19

and/or practices and has approved the policy, custom, and/or practice of labeling every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect.

111.   The Town of Westport failed to provide adequate and appropriate training to its police officers on how to properly assess whether a relative of someone who has died untimely should be considered a suspect and seized without a warrant.

## COUNT FIVE – UNLAWFUL SEIZURE OF MALON'S PROPERTY IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.

112.   Paragraphs 1 through 111 are incorporated herein.

113.   The Defendants physically seized Malon's property, including his phone, clothes, and red work van, within the meaning of the Fourth Amendment without a warrant.

114.   The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

115.   The Defendants also had no grounds to suspect that any of Malon's property was evidence of a crime or was even likely to contain evidence of a crime.

116.   The Defendants also had no grounds to believe that Malon would destroy any evidence contained in his property because he repeatedly told them that he would consent to a search of his cellphone.

117.   Upon information and belief, the Defendants did not obtain a warrant prior to seizing any of Malon's property.

118.    Upon information and belief, the Defendants did not obtain any sort of warrant to seize Malon's red work van and move it to the Westport Police Department's impound lot.

119.    The Defendants' actions violated Malon's Fourth Amendment right to be free from unlawful seizures as to his property.

**COUNT SIX – *MONELL* CLAIM FOR UNLAWFUL SEIZURE OF ERIC MALON'S PROPERTY IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST DEFENDANT TOWN OF WESTPORT**

120.    Paragraphs 1 through 119 are incorporated herein.

121.    The Defendants physically seized Malon's property, including his phone, clothes, and red work van, within the meaning of the Fourth Amendment without a warrant.

122.    The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

123.    The Defendants told Malon that the reason that they seized him was because of his constitutionally protected speech, which cannot serve as the basis for a lawful seizure under the Fourth Amendment.

124.    The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

125.    The Defendants also had no grounds to suspect that any of Malon's property was evidence of a crime or was even likely to contain evidence of a crime.

126.    The Defendants also had no grounds to believe that Malon would destroy any evidence contained in his property because he repeatedly told them that he would consent to a search of his cellphone.

127. Upon information and belief, the Defendants did not obtain a warrant prior to seizing any of Malon's property.

128. Upon information and belief, the Defendants did not obtain any sort of warrant to seize Malon's red work van and move it to the Westport Police Department's impound lot.

129. At all times, the named Defendant Westport Police Officers participated in these actions under color of state law and Town of Westport policy, customs, and/or practices.

130. The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to label every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to confiscate their property and ransack it without any reasonable basis to suspect that it was involved in a crime. Their actions violated Malon's Fourth Amendment rights.

131. Defendant Koskinas – as chief of the Westport Police Department – is the final authority responsible for supervising and/or establishing these policies, customs, and/or practices and has approved the policy, custom, and/or practice of labeling every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to confiscate their property and ransack it without any reasonable basis to suspect that it was involved in a crime. Their actions violated Malon's Fourth Amendment rights.

132. The Town of Westport failed to provide adequate and appropriate training to its police officers on how to properly assess whether a relative of someone who has

died untimely should be considered a suspect and seized without a warrant and whether there is a reasonable basis to suspect that a person's property is involved in a crime.

## COUNT SEVEN – UNLAWFUL SEARCH OF ERIC MALON IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.

133.    Paragraphs 1 through 132 are incorporated herein.

134.    The Defendants physically searched Eric Malon within the meaning of the Fourth Amendment.

135.    The Defendants had no grounds to suspect that Malon had been involved in any crime or had evidence of a crime in his personal possession.

136.    Nonetheless, after seizing him, they physically searched him prior to a search warrant being issued permitting them to do so.

137.    This warrantless search violated Malon's Fourth Amendment right to be free from unreasonable searches.

138.    Upon information and belief, notwithstanding their complete lack of a foundation for any suspicion to search Malon and their knowledge that the tragedy that took place at his house was a murder-suicide committed by Do, the Defendants collectively prepared and presented to a Connecticut Superior Court judge a search warrant application for Malon that suffered from the following non-exhaustive list of defects:

      a. It omitted information that would have shown the court that the Defendants were retaliating against Malon for protected speech by requesting the warrant;

23

b. It omitted information that would have shown the court that Malon did not have any connection to the June 17, 2021 murder-suicide and that the Defendants had already determined the tragedy to be a murder-suicide committed by Do;

c. It relied on speculation creatively worded to claim suspicion that the Defendants did not really have based on the evidence available to them;

d. It omitted information that would have shown the court that Malon had already stated that he would consent to a search of his phone, provided his attorney could be present to help him and that it not be kept from him for an extended period of time.

139. The Defendants collectively created this false concoction of allegations against Malon to obtain a search warrant for his person, knowing that they could not otherwise lawfully obtain one.

140. The Defendants' dishonesty subjected Malon to an unreasonable search based on a warrant that deliberately misled the reviewing judge for the sole purpose of obtaining a finding of probable cause under false pretenses. Their actions violate Malon's Fourth Amendment right to be free from unreasonable searches.

**COUNT EIGHT – *MONELL* CLAIM FOR UNLAWFUL SEARCH OF ERIC MALON IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST DEFENDANT TOWN OF WESTPORT**

141. Paragraphs 1 through 140 are incorporated herein.

142. The Defendants physically searched Eric Malon within the meaning of the Fourth Amendment.

24

143.    The Defendants had no grounds to suspect that Malon had been involved in any crime or had evidence of a crime in his personal possession.

144.    Nonetheless, after seizing him, they physically searched him prior to a search warrant being issued permitting them to do so.

145.    This warrantless search violated Malon's Fourth Amendment right to be free from unreasonable searches.

146.    Upon information and belief, notwithstanding their complete lack of a foundation for any suspicion to search Malon and their knowledge that the tragedy that took place at his house was a murder-suicide committed by Do, the Defendants collectively prepared and presented to a Connecticut Superior Court judge a search warrant application for Malon that suffered from the following non-exhaustive list of defects:

    e.  It omitted information that would have shown the court that the Defendants were retaliating against Malon for protected speech by requesting the warrant;

    f.  It omitted information that would have shown the court that Malon did not have any connection to the June 17, 2021 murder-suicide and that the Defendants had already determined the tragedy to be a murder-suicide committed by Do;

    g.  It relied on speculation creatively worded to claim suspicion that the Defendants did not really have based on the evidence available to them;

    h.  It omitted information that would have shown the court that Malon had already stated that he would consent to a search of his phone, provided

his attorney could be present to help him and that it not be kept from him for an extended period of time.

147.   The Defendants collectively created this false concoction of allegations against Malon to obtain a search warrant for his person, knowing that they could not otherwise lawfully obtain one.

148.   At all times, the named Defendant Westport Police Officers participated in these actions under color of state law and Town of Westport policy, customs, and/or practices.

149.   The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to label every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to search them without any reasonable basis to suspect that they or their property was involved in a crime. In furtherance of this policy, the named Defendant Westport Police Officers presented false allegations to a Connecticut Superior Court judge to obtain a warrant authorizing their actions. Their actions violated Malon's Fourth Amendment rights.

150.   Defendant Koskinas – as chief of the Westport Police Department – is the final authority responsible for supervising and/or establishing these policies, customs, and/or practices and has approved the policy, custom, and/or practice of labeling every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to search them without any reasonable basis to suspect that they or their property was involved in a crime. Their actions violated Malon's Fourth Amendment rights.

151.    The Town of Westport failed to provide adequate and appropriate training to its police officers on how to properly assess whether a relative of someone who has died untimely should be considered a suspect and seized without a warrant and whether there is a reasonable basis to suspect that a person and their property is involved in a crime.

**COUNT NINE – UNLAWFUL SEARCH OF ERIC MALON'S PHONE IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.**

152.    Paragraphs 1 through 151 are incorporated herein.

153.    Upon information and belief, notwithstanding their complete lack of a foundation for any suspicion to search Malon's phone and their knowledge that the tragedy that took place at his house was a murder-suicide committed by Do, the Defendants collectively prepared and presented to a Connecticut Superior Court judge a search warrant application for Malon's phone that suffered from the following non-exhaustive list of defects:

i.    It omitted information that would have shown the court that the Defendants were retaliating against Malon for protected speech by requesting the warrant;

j.    It omitted information that would have shown the court that Malon did not have any connection to the June 17, 2021 murder-suicide and that the Defendants had already determined the tragedy to be a murder-suicide committed by Do;

k.    It relied on speculation creatively worded to claim suspicion that the Defendants did not really have based on the evidence available to them;

27

l.   It omitted information that would have shown the court that Malon had already stated that he would consent to a search of his phone, provided his attorney could be present to help him and that it not be kept from him for an extended period of time.

154.   The Defendants collectively created this false concoction of allegations against Malon to obtain a search warrant for his phone, knowing that they could not otherwise lawfully obtain one.

155.   The Defendants' dishonesty subjected Malon's phone to an unreasonable search based on a warrant that deliberately misled the reviewing judge for the sole purpose of obtaining a finding of probable cause under false pretenses. Their actions violate Malon's Fourth Amendment right to be free from unreasonable searches of his property.

**COUNT TEN – *MONELL* CLAIM FOR UNLAWFUL SEARCH OF ERIC MALON'S PHONE IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST DEFENDANT TOWN OF WESTPORT**

156.   Paragraphs 1 through 155 are incorporated herein.

157.   The Defendants physically searched Eric Malon's phone within the meaning of the Fourth Amendment.

158.   Upon information and belief, notwithstanding their complete lack of a foundation for any suspicion to search Malon's phone and their knowledge that the tragedy that took place at his house was a murder-suicide committed by Do, the Defendants collectively prepared and presented to a Connecticut Superior Court judge a search warrant application for Malon's phone that suffered from the following non-exhaustive list of defects:

28

a.  It omitted information that would have shown the court that the Defendants were retaliating against Malon for protected speech by requesting the warrant;

b.  It omitted information that would have shown the court that Malon did not have any connection to the June 17, 2021 murder-suicide and that the Defendants had already determined the tragedy to be a murder-suicide committed by Do;

c.  It relied on speculation creatively worded to claim suspicion that the Defendants did not really have based on the evidence available to them;

d.  It omitted information that would have shown the court that Malon had already stated that he would consent to a search of his phone, provided his attorney could be present to help him and that it not be kept from him for an extended period of time.

159.   The Defendants collectively created this false concoction of allegations against Malon to obtain a search warrant for his phone, knowing that they could not otherwise lawfully obtain one.

160.   At all times, the named Defendant Westport Police Officers participated in these actions under color of state law and Town of Westport policy, customs, and/or practices.

161.   The named Defendant Westport Police Officers acted pursuant to the Town of Westport's policies, customs, and/or practices, which are to label every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to search their property without

any reasonable basis to suspect that they or their property was involved in a crime. In furtherance of this policy, the named Defendant Westport Police Officers presented false allegations to a Connecticut Superior Court judge to obtain a warrant authorizing their actions. Their actions violated Malon's Fourth Amendment rights.

162.   Defendant Koskinas – as chief of the Westport Police Department – is the final authority responsible for supervising and/or establishing these policies, customs, and/or practices and has approved the policy, custom, and/or practice of labeling every relative of someone who has died untimely a suspect even when the available evidence to officers immediately shows that that person is not a suspect and to search them and their property without any reasonable basis to suspect that they or their property was involved in a crime. Their actions violated Malon's Fourth Amendment rights.

163.   The Town of Westport failed to provide adequate and appropriate training to its police officers on how to properly assess whether a relative of someone who has died untimely should be considered a suspect and whether there is a reasonable basis to suspect that a person and their property is involved in a crime.

**COUNT ELEVEN – MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. 1983) AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.**

164.   Paragraphs 1 through 163 are incorporated herein.

165.   The Defendants unlawfully seized and searched Malon and his property.

166.   The Defendants' actions were motivated by malice.

167.   The Defendants had no foundation upon which to justify their seizure of Malon and his property or their subsequent request to search him and his property.

168. The Defendants initiated a judicial process by applying for search warrants for Malon and his property.

169. Upon information and belief, notwithstanding their complete lack of a foundation for any suspicion to search Malon and their knowledge that the tragedy that took place at his house was a murder-suicide committed by Do, the Defendants collectively prepared and presented to a Connecticut Superior Court judge a search warrant application for Malon and his property that suffered from the following non-exhaustive list of defects:

    a. It omitted information that would have shown the court that the Defendants were retaliating against Malon for protected speech by requesting the warrant;

    b. It omitted information that would have shown the court that Malon did not have any connection to the June 17, 2021 murder-suicide and that the Defendants had already determined the tragedy to be a murder-suicide committed by Do;

    c. It relied on speculation creatively worded to claim suspicion that the Defendants did not really have based on the evidence available to them;

    d. It omitted information that would have shown the court that Malon had already stated that he would consent to a search of his phone, provided his attorney could be present to help him and that it not be kept from him for an extended period of time.

170.    The Defendants collectively created this false concoction of allegations against Malon to obtain search warrants for his person and his property, knowing that they could not otherwise lawfully obtain them.

171.    The Defendants' dishonesty subjected Malon to an unreasonable search based on a warrant that deliberately misled the reviewing judge for the sole purpose of obtaining a finding of probable cause under false pretenses.

172.    The Defendants engaged in a dishonest presentation of allegations to the court for the purpose of retaliating against Malon for his First Amendment protected speech and his repeated assertions of his privacy and ownership rights in his personal property.

173.    The Defendants' actions subjected Malon to a malicious prosecution in violation of his Fourth Amendment rights.

**COUNT TWELVE – VIOLATION OF MALON'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS (42 U.S.C. 1983) AGAINST DEFENDANTS KOSKINAS AND L'ORIO.**

174.    Paragraphs 1 through 173 are incorporated herein.

175.    Malon has both a liberty and a property interest in obtaining his Connecticut pistol permit.

176.    Defendants Koskinas and L'Orio have deprived Malon of his liberty and property interest by concluding, without any form of hearing or even a formal denial of his pistol permit application, that he is an unsuitable person to receive a Connecticut pistol permit.

177.    Upon information and belief, Defendants Koskinas and L'Orio have based this deprivation, at least in part, on Malon's constitutionally protected speech on June 17, 2021.

178.    Defendants Koskinas and L'Orio have never provided Malon with an opportunity to be heard with respect to the delays that they have caused in his pistol permit application.

179.    Their shadowy actions violate Malon's Fourteenth Amendment right to due process.

## COUNT THIRTEEN – ABUSE OF PROCESS AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINA, L'ORIO, AND TOWN OF WESTPORT.

180.    Paragraphs 1 through 179 are incorporated herein.

181.    The Defendants instituted the judicial process against Eric Malon by first detaining him and then applying for search warrants for him and his property.

182.    The Defendants instituted the judicial process against Malon for the purpose of retaliating against him for his speech.

183.    The judicial process for obtaining search warrants were not designed for police officers to retaliate against individuals for their speech.

184.    The Defendants' action abused that process in violation of Connecticut law.

## COUNT FOURTEEN – CIVIL BATTERY AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.

185.    Paragraphs 1 through 184 are incorporated herein.

186.    The Defendants caused harmful and offensive contact with Eric Malon by, without obtaining his consent and in direct violation of his will, physically seizing him,

handcuffing him, subjecting him to an invasive and offense search, and otherwise making harmful and offensive contact with him.

187.    At all times, the Defendants intended to cause such harmful and offensive contact with Malon.

188.    The Defendants had no legal justification for their actions.

189.    Eric Malon suffered injury as a result of the Defendants' conduct.

190.    The Defendants' actions constitute civil battery under Connecticut law.

### COUNT FIFTEEN – FALSE IMPRISONMENT AND ARREST AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS KOSKINAS, L'ORIO, AND TOWN OF WESTPORT.

191.    Paragraphs 1 through 191 are incorporated herein.

192.    The Defendants intentionally seized Eric Malon under the auspices of detaining him and then imprisoned him for hours.

193.    Malon was acutely aware of his detention.

194.    Malon did not consent to his detention.

195.    The Defendants had no grounds to suspect that Malon had been involved in any crime, was about to commit a crime, or was about to destroy evidence of a crime.

196.    The Defendants lacked probable cause or any other legal authority to detain Malon or a warrant authorizing them to do.

197.    The Defendants collectively created a false concoction of allegations against Malon to obtain search and seizure warrants to retroactively justify their detention of Malon, knowing that they could not otherwise lawfully obtain them.

198.    The Defendants' actions constitute false imprisonment and arrest in violation of Connecticut law.

34

## COUNT SIXTEEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS EXCEPT TOWN OF WESTPORT.

199.   Paragraphs 1 through 198 are incorporated herein.

200.   For all of their actions pled within this complaint, the Defendants intended to inflict emotional distress on Eric Malon or knew that emotional distress was the likely result of their conduct, given the context of Malon's daughter being murdered by his estranged partner.

201.   The Defendants' conduct was, and still is as to Defendants Koskinas and L'orio's conduct, extreme and outrageous.

202.   The Defendants' conduct has caused Malon severe emotional distress to the point where he has received treatment for over two years.

203.   The Defendants' conduct constitutes the tort of intentional infliction of emotional distress.

## COUNT SEVENTEEN – NEGLIGENCE AS TO ALL DEFENDANTS.

204.   Paragraphs 1 through 203 are incorporated herein.

205.   In investigating the June 17, 2021 murder-suicide, the Defendants took on a duty and/or a special duty to safeguard Malon's property because they prevented him from taking any such steps during their investigation of the murder-suicide.

206.   Upon information and belief, the Defendants failed to safeguard Malon's property by failing to document the discovery of approximately $15,000 in one of the safes that they opened as well as the discovery of a jewelry chain of sentimental value to Malon valued at approximately $6,000.

207.    Upon information and belief, the Defendants disconnected all of Malon's security cameras for his home during their investigation so he could not monitor their activities or who had access to his home.

208.    Upon information and belief, the Defendants failed to post a police officer or any other proper official to safeguard his property during their investigation as well as until he was permitted to return to the property.

209.    Upon information and belief, the Defendants failed to lock the doors of Malon's house during their custody of his property and after they had completed their investigation.

210.    The Defendants' actions violated every generally accepted practice of policing and the securing of crime scenes and personal property.

211.    Upon information and belief, the Defendants' conduct violated the State of Connecticut's official policies on securing crime scenes, inventorying evidence, and securing personal property.

212.    Upon information and belief, the Defendants' conduct violated the Town of Westport's official policies on securing crime scenes, inventorying evidence, and securing personal property.

213.    As a result of the Defendants' conduct, Malon has lost – apparently forever - approximately $15,000 in cash and a $6,000 jewelry chain of great sentimental value to him.

214.    The Defendants' conduct was negligent.

**COUNT EIGHTEEN – RECKLESSNESS AS TO ALL DEFENDANTS.**

215.    Paragraphs 1 through 214 are incorporated herein.

216.    In investigating the June 17, 2021 murder-suicide, the Defendants took on a duty and/or a special duty to safeguard Malon's property because they prevented him from taking any such steps during their investigation of the murder-suicide.

217.    Upon information and belief, the Defendants failed to safeguard Malon's property by failing to document the discovery of approximately $15,000 in one of the safes that they opened as well as the discovery of a jewelry chain of sentimental value to Malon valued at approximately $6,000.

218.    Upon information and belief, the Defendants disconnected all of Malon's security cameras for his home during their investigation so he could not monitor their activities or who had access to his home.

219.    Upon information and belief, the Defendants failed to post a police officer or any other proper official to safeguard his property during their investigation as well as until he was permitted to return to the property.

220.    Upon information and belief, the Defendants failed to lock the doors of Malon's house during their custody of his property and after they had completed their investigation.

221.    The Defendants' actions violated every generally accepted practice of policing and the securing of crime scenes and personal property.

222.    Upon information and belief, the Defendants' conduct violated the State of Connecticut's official policies on securing crime scenes, inventorying evidence, and securing personal property.

37

223.    Upon information and belief, the Defendants' conduct violated the Town of Westport's official policies on securing crime scenes, inventorying evidence, and securing personal property.

224.    As a result of the Defendants' conduct, Malon has lost – apparently forever - approximately $15,000 in cash and a $6,000 jewelry chain of great sentimental value to him.

225.    The Defendants' conduct was reckless and well outside the bounds of any reasonable course of conduct.

## DEMAND FOR RELIEF

Wherefore, the Plaintiff, Eric Malon, hereby respectfully requests the following relief:

A.  An order holding the Defendants jointly and severally liable as permitted by law;

B.  Compensatory damages;

C.  Punitive damages;

D.  Costs and attorney's fees;

E.  Any such further relief that the Court deems just and equitable.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

38

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution, the Plaintiff, Eric Malon, claims his right for a trial by jury.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com