**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERIC MALON,<br>*Plaintiff*,<br><br>v.<br><br>FOTI KOSKINAS ET AL.,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:24-CV-01052 (SVN)<br><br><br><br><br><br>September 14, 2026 |

**RULING AND ORDER ON MOTIONS TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Eric Malon sues various Westport, Connecticut, Police Department personnel, various Connecticut State Police troopers, a Supervisory Assistant State's Attorney, and the Town of Westport[1] for alleged violations of his civil rights occurring in connection with the investigation of a June 17, 2021, incident at his home in which his estranged partner and young child were found dead. All Defendants have moved to dismiss the Second Amended Complaint ("SAC"), the operative pleading in this matter. For the reasons set forth in this ruling, Defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part. Specifically, Count One is dismissed as to Defendants Frechette and Woods; Count Three is dismissed as to Defendants Frechette, Woods, Heinmiller and Baker; Count Five is dismissed as to Defendants Frechette, Woods, and Baker; Count Seven is dismissed as to Defendants Frechette, Woods, Paulsson, Shaw, Beauton, Vayan, Clabby, Nowinski, Ornousky, Heinmiller, Baker, and

[1] The Defendants are Westport Chief of Police Foti Koskinas, Westport Police Department officers Ryan Paulsson, Erin Shaw, Albert Nowinski, Marc Heinmiller, James Baker, III, Eric Woods, Phillip Restieri, James Sullivan, Taylor Field, and Jonathan Lauria, and the Town of Westport (collectively, the "Westport Defendants"); Connecticut State Police Troopers Nicholas Olivetti, Michael Mengacci (identified in the case caption as "Michael Mencacci"), Ryan Frechette, Michael R. Beauton, Edmund G. Vayan, Corey Clabby (collectively, the "State Defendants"); and former Supervisory Assistant State's Attorney Maureen Ornousky. *See* Sec. Am. Compl., ECF No. 119, ¶¶ 8–26. Plaintiff states he will be voluntarily dismissing his claims against Defendants Frechette and Woods. Pl.'s Opp. to State Defs.' Mot. to Dismiss, ECF No. 139 at 3; Pl.'s Opp. to Westport Defs.' Mot. to Dismiss, ECF No. 138 at 13. The Court notes that Plaintiff made these representations in February of 2026, but still has not filed any notices of voluntary dismissal. The Court therefore dismisses Frechette and Woods through this ruling and order.

Field; Counts Nine, Ten, Thirteen, Fourteen, and Fifteen are dismissed in whole; and Count Sixteen is dismissed as to Defendants Ornousky, Vayan, Beauton, Clabby, Olivetti, and Mengacci.

## I. FACTUAL BACKGROUND

The following facts are taken from the SAC and accepted as true for purposes of resolving Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Events at Plaintiff's Home

On June 17, 2021, Plaintiff's estranged partner, Tracy Chinh Do, drowned their seven-year-old daughter in the bathtub at their home and then committed suicide. ECF No. 119 ¶¶ 1, 31. The couple's other minor child discovered her mother's body when she returned home from school and called 9-1-1. *Id.* ¶ 32. Defendant Eric Woods and other Westport police officers were among the first to arrive on scene. *Id.* ¶ 35. Woods and at least one other Westport police officer conducted a protective sweep of Plaintiff's home and discovered Plaintiff's daughter, deceased in the bathroom. *Id.* ¶¶ 36–37. Defendant Foti Koskinas, the Westport Chief of Police, completed the protective sweep, after which all of the Westport police officers exited the house. *Id.* ¶¶ 38–40. Woods stated to Koskinas that it appeared to be a murder-suicide. *Id.* ¶ 41. While Woods prepared to notify Plaintiff, Koskinas assumed initial command over securing the premises and obtaining assistance from the Connecticut State Police. *Id.* ¶ 42. After more Westport Police officers arrived on scene, including Defendant Ryan Paulsson, a group of officers commanded authority over the scene, including Koskinas, Paulsson, Woods, and (non-defendant) Anthony Prezioso, as well as Connecticut State Police troopers Defendants Edmund Vayan, Michael R. Beauton, and Corey Clabby. *Id.* ¶¶ 43–44. Woods explained his "initial working theory" to this group. *Id.* ¶ 45.

Woods delayed notification to Plaintiff of the events until the Connecticut State Police arrived. *Id.* ¶ 46. Instead, Plaintiff was alerted to the emergency at his property through the Google

Nest security system on his cellphone. *Id.* ¶ 50. Upon seeing the police presence at his property through the remote security system, he left work and returned home. *Id.* At approximately 4:43 p.m., when Plaintiff arrived at his home, Woods informed him that Do was deceased. *Id.* ¶ 52. Plaintiff demanded to see his older daughter, found her near a police cruiser, began to comfort her—and then realized that his younger daughter was missing. *Id.* ¶ 53. Plaintiff told Woods to find out what happened, and Woods informed Plaintiff that his other child was deceased. *Id.* ¶¶ 54–55. Woods attempted to comfort Plaintiff, who was distraught. *Id.* ¶ 56. Plaintiff attempted to enter his driveway to see his deceased child, but Woods, Paulson, and Defendant Albert Nowinski stopped him, to preserve the crime scene; Plaintiff cooperated with their request. *Id.* ¶ 59.

Plaintiff began to use his cell phone, and asked Nowinski for privacy to be able to do so. *Id.* ¶ 64. Nowinski followed Plaintiff at a respectful distance. *Id.* ¶ 68. At approximately 5:18 p.m., Prezioso, Paulsson, Woods, Vayan, Beauton, and another Westport police officer, Defendant Erin Shaw, met to discuss whether Plaintiff's cellphone was of interest to the police. *Id.* ¶¶ 76–77. Plaintiff alleges that although no officer had any reason to suspect that Plaintiff had committed a crime, the officers were interested in viewing footage from the home cameras that was accessible from Plaintiff's phone. *Id.* ¶¶ 78–80. Shaw and Paulsson approached Plaintiff, but he was on a phone call. *Id.* ¶¶ 81–83. A couple of minutes later, after Plaintiff ended his call, Shaw, Nowinski, and Koskinas approached, and Shaw explained to Plaintiff that the officers needed his phone and would give him another. *Id.* ¶¶ 85–89. Plaintiff responded: "You're not getting my fucking phone," explaining that his life and business depended upon it. *Id.* ¶ 90. Shaw explained that they could download its contents and then return it to him, but that it was needed for the investigation, and Nowinski further noted that it would help protect Plaintiff if he was not involved in the deaths.

*Id.* ¶¶ 91–92. Plaintiff stated he was not ready for that and continued to use his phone. *Id.* ¶¶ 93–94. Nowinski explained that he had the replacement phone if Plaintiff changed his mind. *Id.* ¶ 96.

At approximately 5:25 p.m., Paulsson and Shaw returned to Plaintiff and requested his phone again, but Plaintiff declined to give it to them. *Id.* ¶¶ 98–102. Paulsson asked if Plaintiff would let police copy his phone, which Plaintiff tentatively agreed to, but he expressed concern about not getting the phone back. *Id.* ¶¶ 103–04. Paulsson stated that ultimately, law enforcement would get the phone for the investigation, with or without Plaintiff's consent. *Id.* ¶ 110. Plaintiff reiterated "get out of my face!" accompanied by an explicit insult. *Id.* ¶ 111. Paulsson then walked away. *Id.* ¶ 112. The command group—consisting of Prezioso and Paulsson, Shaw, Vayan, Beauton, and Clabby—agreed to make one last attempt to persuade Plaintiff to surrender his phone, or to take it by force. *Id.* ¶¶ 97, 114. Beauton was to make the persuasion attempt while Vayan called Defendant Maureen Ornousky, Supervisory Assistant State's Attorney, for direction on what to do. *Id.* ¶ 115. Ornousky advised Vayan to forcibly seize Plaintiff and his phone if he did not surrender it. *Id.* ¶ 116.

Plaintiff explained to Beauton that his attorney was coming and if she gave permission for the police to take his phone, he would agree to it. *Id.* ¶ 119. Beauton explained the process of downloading a cellphone and the anticipated time frame, and that if Plaintiff failed to cooperate, police would seize his phone. *Id.* ¶ 120. Plaintiff was upset and began walking away from police, while continuing to swear at them. *Id.* ¶¶ 121–26. Eventually, Beauton said "you're gonna go in handcuffs in two seconds if you keep doing what you're doing." *Id.* ¶ 127.

Shortly thereafter, Vayan, Beauton, and Clabby restrained Plaintiff, and Nowinski handcuffed him. *Id.* ¶¶ 129–30. Prezioso, Paulsson, and Shaw observed the handcuffing, and Koskinas was informed of these events, but none of them intervened or released Plaintiff from

custody. *Id.* ¶¶ 133–34. Plaintiff alleges that none of the officers had "specific and articulable facts" (or probable cause) to suspect that Plaintiff committed a crime. *Id.* ¶¶ 137–38, 142. Plaintiff also states that no officer told Plaintiff at any point that he could not use his phone. *Id.* ¶ 140.

While Plaintiff was in handcuffs, Vayan again sought direction from Ornousky. *Id.* ¶¶ 148–49. Ornousky directed Vayan to keep Plaintiff in handcuffs until they could obtain a search warrant for Plaintiff's phone, and Vayan informed the command group (now consisting of Prezioso, Koskinas, Paulsson, Shaw, Beauton, and Clabby) of the decision. *Id.* ¶¶ 150–51. Plaintiff begged the command group to remove the handcuffs, and either Clabby or Beauton declined. *Id.* ¶¶ 152–53. Nowinski confirmed to Plaintiff that he was his "prisoner." *Id.* ¶ 154. Plaintiff verbally berated these Defendants, using explicit language, *id.* ¶ 155, and they responded that his seizure was "standard procedure," *id.* ¶ 156.

Beauton asked Plaintiff again to surrender his phone, promising that if Plaintiff cooperated, they would remove the handcuffs, but Plaintiff declined. *Id.* ¶¶ 157–59. Acting on the instructions of Ornousky, these officers kept Plaintiff in handcuffs for approximately fifty-four minutes, in view of his neighbors, family, and friends. *Id.* ¶¶ 163–64.

B. <u>Events at Westport Police Department</u>

At approximately 6:31 p.m., Plaintiff, still in handcuffs, was transported from his home to the Westport Police Department in a police cruiser. *Id.* ¶¶ 170–72. Plaintiff asked Sullivan and Field to remove the handcuffs, but they said "not yet," because they had to ensure Plaintiff did not touch his phone. *Id.* ¶¶ 173–74. At approximately 7:12 p.m., Plaintiff told Sullivan that he "had offered to let the police copy his phone," and reiterated the offer. *Id.* ¶ 182. At approximately 7:30 p.m., Defendants Shaw, Philip Restieri, Nicholas Olivetti, and Michael Mengacci searched Plaintiff, seized his property (including his cell phone), and placed him in a holding cell. *Id.* ¶¶ 185–89. Plaintiff was held there for at least three hours while Olivetti and Mengacci

interrogated him. *Id.* ¶¶ 189–90. Afterwards, Olivetti and Mengacci conditioned Plaintiff's release on him surrendering his clothes, and Plaintiff obliged. *Id.* ¶¶ 191–92. "Left with no choice if he wanted to end his nightmare," Plaintiff complied and was allowed to leave, after what he calculates as more than seven hours in police custody. *Id.* ¶ 192. He was never charged with a crime. *Id.* ¶ 206.

C. <u>Searches</u>

Meanwhile, at approximately 5:41 p.m., at Paulsson and Prezioso's direction, Shaw conducted a warrantless search of the front of Plaintiff's van, looking for Plaintiff's phone. *Id.* ¶¶ 207–09.

Officers were also engaged in seeking search warrants for Plaintiff's property. Plaintiff alleges that, although he gave consent for officers to search his home, Defendants Ornousky, Koskinas, Paulsson, and Vayan decided to "expand the scope of the search warrants that they would apply for to retaliate against [Plaintiff] for his speech and conduct." *Id.* ¶¶ 193–94. Defendants Restieri, Westport police officer Eric Heinmiller, and Westport police officer James Baker, III, first prepared a warrant for Plaintiff's clothes, but that warrant was not executed because Defendants Olivetti and Mengacci "coerced" Plaintiff into surrendering his clothes before the warrant's issuance. *Id.* ¶ 196. The second warrant, for Plaintiff's work van, was authorized by a judge but also was never executed because Heinmiller and Prezioso had already arranged for the seizure and towing of Plaintiff's van. *Id.* ¶ 197. Plaintiff alleges that the warrant affidavits relied on "innuendo" and "selective presentation" of officers' hunches, and did not state that Plaintiff had agreed to allow law enforcement to copy his phone, that he had asked to wait for his attorney to arrive before surrendering his phone, that Plaintiff had asked the officers to give him space—which Plaintiff says constituted invocation of his Fifth Amendment right to remain silent—or that their conduct was "motivated by" Plaintiff's "choice of language" towards them. *Id.* ¶¶ 199–204.

Plaintiff further alleges that the affidavit "painted [him] in the worst possible light while whitewashing [the officers'] conduct." *Id.* ¶ 205.

D. Additional Alleged Retaliation

In the aftermath of the June 17th events, Plaintiff states that numerous individuals sent messages to the Connecticut Medical Examiner's Office and Connecticut State Police and Westport Police Departments demanding that they investigate Plaintiff for the murder-suicide, causing Plaintiff to fear for his and his living minor child's safety. *Id.* ¶¶ 211–12. Plaintiff applied for a pistol permit, for which he met all requirements, through the Westport Police Department. *Id.* ¶¶ 213–14. Plaintiff alleges that Koskinas repeatedly delayed this process for various "pretextual reasons," including that Plaintiff had not spent enough time in therapy or let enough time pass. *Id.* ¶ 215. When Plaintiff continued to "press" Koskinas and the Westport Police Department over this treatment, Defendant Jonathan Lauria allegedly accused Plaintiff of lying on his application, without conducting any investigation about whether Plaintiff had made an accidental mistake on his application. *Id.* ¶ 216. Plaintiff then submitted a second application for a pistol permit to correct the alleged errors, but Koskinas and Lauria refused to accept it. *Id.* ¶ 217. Plaintiff alleges that he was denied "any form of hearing or even a formal denial of his pistol permit application." *Id.* ¶ 307. It took Plaintiff more than a year to secure a pistol permit, which he received only after winning an appeal before the Connecticut Board of Firearms Permit Examiners. *Id.* ¶ 218. Plaintiff alleges that Koskinas and Lauria delayed the issuance of the pistol permit as retaliation for his speech and assertion of rights on June 17, 2021. *Id.* ¶ 219.

E. Plaintiff's Claims and Procedural Background

The claims asserted in Plaintiff's SAC under 42 U.S.C. § 1983 can be grouped as follows: (i) First Amendment retaliation, against all Defendants except the Town of Westport (Count One); (ii) unlawful search and seizure of Plaintiff and his property in violation of the Fourth Amendment,

against all Defendants except Koskinas, Lauria, and the Town of Westport (Counts Three, Five, Seven, and Nine); (iii) municipal liability claims for retaliation, unlawful search and seizure of Plaintiff, and unlawful search and seizure of Plaintiff's property, against the Town of Westport pursuant to *Monell* v. *Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (Counts Two, Four, Six, Eight, and Ten); and (iv) violation of Plaintiff's procedural due process rights against Koskinas and Lauria, based on their failure to approve his application for a pistol permit (Count Twelve). Plaintiff also brings several state claims, including abuse of process (Count Thirteen); civil battery (Count Fourteen); false imprisonment and arrest (Count Fifteen); and intentional infliction of emotional distress against Defendant Koskinas, Lauria, Ornousky, Vayan, Beauton, Clabby, Olivetti, and Mengacci (Count Sixteen).[2] As relief, Plaintiff seeks compensatory and punitive damages and attorney's fees.

The Court previously granted in part and denied in part Defendants' motions to dismiss Plaintiff's first amended complaint. *See Malon v. Koskinas*, No. 3:24-CV-1052 (SVN), 2025 WL 5083170 (D. Conn. Sept. 26, 2025) ("*Malon I*"). All named Defendants have now moved to dismiss the SAC. ECF No. 128 (State Defendants); ECF No. 129 (Westport Defendants); ECF No. 130 (Nowinski); ECF No. 131 (Ornousky). Plaintiff opposes all of the motions, but concedes and withdraws various claims against various Defendants, as described below.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed

[2] There is no Count Eleven in Plaintiff's SAC.

allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

For the reasons discussed below, the Court GRANTS the motion to dismiss Count One as to Defendants Frechette and Woods; Count Three as to Defendants Frechette, Woods, Heinmiller and Baker; Count Five as to Defendants Frechette, Woods, and Baker; Count Seven as to Defendants Frechette, Woods, Paulsson, Shaw, Beauton, Vayan, Clabby, Nowinski, Ornousky,

Heinmiller, Baker, and Field; Counts Nine, Ten, Thirteen, Fourteen, and Fifteen as to all defendants; and Count Sixteen as to Defendants Ornousky, Vayan, Beauton, Clabby, Olivetti, and Mengacci.

A. Count One: First Amendment Retaliation (SAC ¶¶ 220–24)

First, the Court finds that Plaintiff states a First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendants Koskinas, Paulsson, Shaw, Nowinski, Heinmiller, Baker, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, Ornousky, and Lauria. Accordingly, the Court denies these Defendants' motions to dismiss Count One.

"To state a claim under [42 U.S.C. § 1983], a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2022) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "To plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiff alleges that each Defendant retaliated against him for using profane language and for declining to surrender his phone. *See* ECF No. 119 ¶¶ 116, 127, 131, 222–23. The State and Westport Defendants insist that the SAC does not put each Defendant on notice as to the form of retaliation they are alleged to have committed, and simply asserts that "all the defendants did everything," *see, e.g.*, ECF No. 128-1 at 9; *see also* 129-1 at 14, but this is unavailing for the reasons explained below.

As the Court noted in *Malon I*, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Malon I*, 2025 WL 5083170, at *3 (quoting *Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013). Thus, "[p]leadings that (1) 'fail to differentiate among the defendants, alleging instead violations by 'the defendants''; (2) 'fail to identify which defendants were alleged to be responsible for which alleged violations,' or; (3) 'provide no factual basis to distinguish [the defendants'] conduct' may not meet this standard." *Arias v. E. Hartford*, No. 3:20-CV-00895 (JCH), 2021 WL 3268846, at *3 (D. Conn. July 30, 2021) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)) (cleaned up).

While the Court dismissed Plaintiff's first amended complaint on grounds that it engaged in impermissible group pleading and failed to properly allege the personal involvement of the various Defendants in the alleged constitutional violations, *see Malon I*, 2025 WL 5083170, at *3–5, it cannot find that the SAC suffers from the same flaw. Even if one paragraph of the relation claim refers to "Defendants," *see* ECF No. 119 ¶ 222, the allegations preceding the statement of claims sufficiently detail the alleged acts of each of the individual Defendants and sufficiently allege their personal involvement in the alleged retaliation. For instance, the SAC states that Plaintiff used explicit language with Shaw, Paulsson, Beauton, Vayan, Clabby, and Nowinski, and told them he would not give police his phone. *See, e.g.*, ECF No. 119 ¶¶ 90, 100, 111, 119–20, 126, 155. It further alleges that Vayan, Beauton, Clabby, and Nowinski together seized and handcuffed Plaintiff for just under an hour with the approval and observation of Koskinas, Paulsson, and Shaw, *id.* ¶¶ 129–39, 150–64; that Sullivan and Field continued the detention of Plaintiff without any cause, *id.* ¶¶ 167–81; that Olivetti, Mengacci, Sullivan, and Restieri together patted Plaintiff down and detained him at the police department without any cause, *id.* ¶¶ 185–88;

that Olivetti and Mengacci seized Plaintiff's clothing as a condition for his release from custody, *id.* ¶ 191; that Ornousky, Koskinas, Paulsson, and Vayan improperly expanded the scope of the search warrants and directed the preparation of a misleading master warrant affidavit in retaliation for Plaintiff's speech, *id.* ¶ 194; that Heinmiller and Baker prepared fabricated warrants with assistance from Restieri, *id.* ¶¶ 195–97; and that Koskinas and Lauria delayed and denied Plaintiff's pistol permit application, *id.* ¶¶ 213–19; *see also* ECF No. 139 at 7–11 (describing involvement of each individual Defendant in alleged retaliation). These allegations sufficiently plead Plaintiff's protected speech, the concrete harm he suffered at the hands of each Defendant, and—drawing reasonable inferences in Plaintiff's favor—that each Defendant took the alleged actions because of Plaintiff's vulgar speech and refusal to surrender his phone.

The State Defendants insist that the allegations pertaining to them are insufficient to put them on notice because, for example, Plaintiff should have separated the counts involving "retaliation at the scene" and "retaliation alleged to have taken place at the Westport police department." ECF No. 141 at 2; *see also* ECF No. 129-1 at 13–17; ECF No. 130-1 at 23–35. But Plaintiff's incorporation of all prior allegations in each count is only improper "when the complaint makes it 'extremely difficult to discern the precise nature of the claims,' or when it is 'virtually impossible to know which allegations of fact were intended to support which claim(s) for relief.'" *Jaddo v. Town & City of Stamford, Connecticut*, No. 3:21-CV-350 (OAW), 2022 WL 2168077, at *7 (D. Conn. June 16, 2022) (quoting *Manbeck v. Micka*, 640 F. Supp. 2d 351, 366 (S.D.N.Y 2009); *Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014)). Additionally, as recognized in *Jaddo*, the argument that the factual allegations are inappropriately incorporated into multiple claims is typically made through a motion for a more definite statement, rather than a motion to dismiss. *Id.* Where, as here, Plaintiff identifies the relevant Defendants in

the factual allegations, and those allegations are clear with respect to the conduct of each Defendant, each Defendant is on notice of the legal rights they allegedly violated and the complaint's "organizational scheme" is adequate. *See McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, No. 3:19-CV-01124 (MPS), 2020 WL 5074303, at *4 (D. Conn. Aug. 27, 2020).

At this juncture, Plaintiff also sufficiently pleads the personal involvement of each of the individual Defendants in the alleged retaliation. "[D]irect participation as a basis of liability … requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Murvin v. Jennings*, 259 F. Supp. 2d 180, 190 (D. Conn. 2003) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). As detailed above, Plaintiff has alleged that each of the individual Defendants participated in the alleged retaliation. Plaintiff's allegations against Defendant Shaw pose the closest question, since Plaintiff alleges that Shaw simply observed his handcuffing. *See* ECF No. 119 ¶ 133. But Plaintiff alleges that she failed to intervene to stop what he perceives as a retaliatory arrest. *See* ECF No. 119 ¶ 134. This allegation is sufficient to show her personal involvement in the alleged constitutional violation. *See Alston v. N.Y. City Dep't of Corr.*, 24 Civ. 6444 (NRB), 2026 WL 751205, at *5 (S.D.N.Y. Mar. 17, 2026) (recognizing that failure to intervene is not a standalone cause of action and that it requires a showing of personal involvement). Likewise, although Defendants Heinmiller, Baker, and Restieri were not present at the scene to witness Plaintiff's speech, Plaintiff alleges that they relied on information they obtained from other officers in preparing the search warrants, *see* ECF No. 119 ¶ 195; thus, the Court can reasonably infer that they, too, were thus motivated by Plaintiff's refusal to surrender his phone and explicit speech in seeking the search warrants and expanding their scope.

Defendant Nowinski further argues that Plaintiff obviates his own claim when he states that officers handcuffed the Plaintiff at the direction of Ornousky (rather than in retaliation to Plaintiff's speech). ECF No. 130-1 at 27. To the contrary, Plaintiff alleges various statements by officers tending to show that handcuffing Plaintiff was in retaliation for his profanity and/or for declining to surrender his phone. *See, e.g.*, ECF No. 119 ¶¶ 127, 131, 157. Plaintiff also alleges that Nowinski personally handcuffed Plaintiff. *Id.* ¶ 130. Taking these allegations as true, Plaintiff has adequately stated a retaliation claim against Nowinski.

Finally, with respect to Defendant Ornousky, Plaintiff contends that she gave "marching orders" for various retaliatory acts, *see* ECF No. 137 at 8, including that the police officers seize Plaintiff because he refused to surrender his phone and expand the scope of the search warrants. *See, e.g.*, ECF No. 119 ¶¶ 161, 163, 194. These allegations suffice to allege her personal involvement in the alleged retaliation.

Accordingly, Count One may proceed against all Defendants named therein (except Frechette and Woods).

B. <u>Count Three: Fourth Amendment Unlawful Seizure of Plaintiff (SAC ¶¶ 236–242)</u>

Plaintiff also states a Fourth Amendment unlawful seizure claim under 42 U.S.C. § 1983 against Defendants Paulsson, Shaw, Nowinski, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, and Ornousky.[3]

A person is "seized" for purposes of the Fourth Amendment when, "by means of physical force or a show of authority, his freedom of movement is restrained," and, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980). An arrest is a

[3] Plaintiff does not allege Count Three against Koskinas, Lauria, or the Town of Westport.

"quintessential 'seizure of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).[4]

Plaintiff alleges that Defendants unlawfully seized him without a warrant. Specifically, Nowinski, Beauton, Vayan, and Clabby seized Plaintiff at the scene, ECF No. 119 ¶¶ 129–47, 152–54, 161–63; Sullivan and Field kept him in handcuffs and transported Plaintiff to the Police Station, where he was held for hours, *id.* at ¶¶ 167–75, 192; Restieri, Olivetti, Sullivan, and Mengacci[5] detained Plaintiff at the Westport Police Department, *id.* at ¶¶ 167–91; Paulsson was the ranking officer who observed seizure of the plaintiff and failed to intervene to stop it, *id.* at ¶¶ 133–34; and Shaw, at the very least, also failed to intervene, *id.* ¶ 163. With respect to Ornousky, Plaintiff sufficiently alleges that she gave the order to detain Plaintiff (unlawfully, in his view). *Id.* ¶ 161. It is undisputed that Plaintiff was confined without his consent. And drawing reasonable inferences in Plaintiff's favor at this juncture, a reasonable person would believe he was not free to leave throughout the duration of these events.

Plaintiff withdraws his assertion of this claim against Heinmiller and Baker. ECF No. 138 at 8. Accordingly, Count Three is dismissed with respect to Heinmiller and Baker only. Thus,

---

[4] A "warrantless deprivation of liberty from the moment of arrest to the time of arraignment" is typically alleged as false arrest, which is cognizable as a Fourth Amendment violation through § 1983. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995); *Wagner v. Hyra*, 518 F. Supp. 3d 613, 625 (N.D.N.Y. 2021). But as the Fourth Amendment prohibits unreasonable seizures, and not merely unreasonable arrests, a § 1983 claim can be stated for an unreasonable seizure even in the absence of an arrest. *Id.* (citing *Vasquez v. Panpena*, No. 08-CV-4184, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009)). Here, Plaintiff studiously avoids any allegation in Count Three that he was arrested, though he refers to an arrest in his now-withdrawn state law claims. *Compare* ECF No. 119 ¶¶ 237–240 (alleging Plaintiff was "physically seized," though not that he was arrested) *with id.* ¶ 329 (alleging a state law claim of false imprisonment "and arrest"). Accordingly, the Court treats Count Three as a more general unlawful seizure claim, rather than a false arrest claim.

[5] Olivetti and Mengacci contend that Plaintiff's SAC did not put them on notice of a seizure claim (by way of their detaining the Plaintiff at the station) and that had they "known that particular constitutional violation was alleged against them, and the facts that supported it, they would have researched whether that actually was a fourth amendment violation . . . ." *See* ECF No. 141 at 3. The Court holds that the SAC did put them on notice of such a claim. And, in any event, they argue this in their reply brief—the opportune space for addressing such initially unanticipated arguments made by the opposing party—but fail to make any substantive Fourth Amendment arguments therein.

Count Three may proceed against Defendants Paulsson, Shaw, Nowinski, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, and Ornousky.

C. Count Five: Fourth Amendment Unlawful Searches and Seizures of Plaintiff's Property (SAC ¶¶ 236–42)

Next, Plaintiff adequately states a claim for unlawful search and seizure of his property—including his phone, his clothes, and his work van—against Defendants Paulsson, Shaw, Nowinski, Heinmiller, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, and Ornousky, but not against Baker.

"A seizure occurs when 'there is some meaningful interference with an individual's possessory interests' in the property seized." *Maryland v. Macon*, 472 U.S. 463, 469 (1985) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Here, Plaintiff alleges that Nowinski, Beauton, Vayan, and Clabby seized possessions on Plaintiff's person when they handcuffed him at Ornousky's direction (*i.e.*, interfered with him using his phone), ECF No. 119 ¶¶ 149–50, 158; Sullivan and Field seized Plaintiff's phone and other property on his person when they transported him, handcuffed, to the station, and kept him handcuffed there without access to his phone, *id.* ¶¶ 167–75; Restieri, Sullivan, Olivetti, and Mengacci searched the Plaintiff and seized his phone and clothes, *id.* ¶¶ 185–87, 191–92; Shaw unlawfully searched Plaintiff's van at the direction of Paulsson, *id.* ¶¶ 207–09; and Heinmiller arranged for Plaintiff's van to be seized and towed without a search warrant or consent, *id.* ¶ 210. Thus, Plaintiff articulates the searches and seizures, the involved Defendants, and their roles in effectuating the alleged Fourth Amendment violations. Contrary to their arguments, these Defendants are not "left to guess if they were involved in the seizure of any particular item." ECF No. 128-1 at 11.

However, Plaintiff fails to allege Baker's involvement in seizure of his property. Although Plaintiff notes that Baker helped prepare an allegedly problematic search warrant for his van, ECF

No. 138 at 8, the warrant was never executed because other Defendants arranged for seizure of the van before the warrant was signed. ECF No. 119 ¶ 197. Similarly, although Baker helped prepare a warrant for Malon's clothes, Plaintiff alleges that Olivetti and Mengacci were involved in seizing Plaintiff's clothes before the warrant's issuance. *Id.* ¶ 196. Accordingly, the Court dismisses Count Five with respect to Defendant Baker.

D. Count Seven: Fourth Amendment Unlawful Search of Plaintiff (¶¶ 274–281)

Next, Plaintiff states a claim for unlawful search of his person against Defendants Restieri, Sullivan, Olivetti, and Mengacci, but not against the other Defendants against whom this claim is alleged. Plaintiff alleges that there are "two components" to Count Seven: "(1) the unlawful search of Malon's person, and (2) the unlawful preparation of a search warrant for his clothing." ECF No. 139 at 14.

With respect to Defendants Restieri, Olivetti, Mengacci, and Sullivan, Plaintiff alleges that they "together patted [Plaintiff] down and removed and inventoried his property, including notably his cell phone." ECF No. 139 at 10; ECF No. 119 ¶ 185–87. These allegations are sufficient to allege these Defendants' involvement in the purportedly unlawful search of Plaintiff.

However, Plaintiff offers no similarly specific allegations pertaining to Defendants Paulsson, Shaw, Beauton, Vayan, Clabby, Nowinski, and Ornousky. Plaintiff argues that the other State Defendants (besides Olivetti and Mengacci) and Ornousky are responsible for the allegedly unlawful search because "their unlawful acts of retaliation and seizing Malon led to the unlawful search of his person." ECF No. 139 at 14. In so arguing, Plaintiff collapses his retaliation claim into his unlawful search claim, and fails to comport with the rule that a defendant must be personally involved in a constitutional violation before being subjected to damages. *See Spavone*, 719 F.3d at 135. Additionally, Plaintiff contends that Defendants are generally "culpable for the preparation of misleading, retaliatory warrants being sought without probable cause," ECF No.

139 at 15; but this falls back on impermissible group pleading that was the subject of *Malon I*. And notably, as to Paulsson and Shaw, Plaintiff does not identify *any* basis for asserting Count Seven against them in his opposition to their Motion to Dismiss. *See* ECF No. 138 at 8.

Plaintiff argues with respect to Nowinski that, because Plaintiff alleges that Nowinski handcuffed him, Nowinski must also have patted Plaintiff down "in accordance with normal police practices," resulting in an unlawful search. ECF No. 140 at 13. But this stretches the SAC's allegations further than they can reach. In the absence of allegations suggesting that Nowinski actually engaged in a search that could be unlawful, the Court cannot "infer" additional conduct not described in the Complaint.[6]

The Court thus finds that there are insufficient factual allegations in the complaint for Count Seven to proceed against Defendants Paulsson, Shaw, Beauton, Vayan, Clabby, Nowinski, and Ornousky. Additionally, Plaintiff withdraws his assertion of Count Seven with respect to Defendants Heinmiller, Baker, and Field. ECF No. 138 at 8, 11. Accordingly, the Court also dismisses this Count as to Heinmiller, Baker, and Field.

In sum, Count Seven may proceed against Defendants Restieri, Sullivan, Olivetti, and Mengacci only.

[6] Plaintiff seeks leave to amend to add an allegation concerning Nowinski's allegedly unlawful pat down. ECF No. 140 at 13. But Plaintiff has already been permitted to amend his complaint (twice), and Nowinski convincingly notes that Plaintiff's memorandum states only that it is "not unreasonable to infer" that Nowinski patted him down—not that the depositions or bodyworn camera footage actually show as much. ECF No. 144 at 6 (quoting ECF No. 140 at 13). While Plaintiff claims that leaving out this detail was merely an oversight and he can amend to make a specific allegation that Nowinski patted him down after handcuffing him, the Court declines to permit a third amendment at this juncture, given that Plaintiff had the opportunity to have alleged this fact and to allow amendment after discovery has closed would be prejudicial to Nowinski. *See Phelan v. Campbell*, 507 Fed. Appx. 14, 16 n.1 (2d Cir. 2013) (finding district court did not abuse its discretion when the "motion to amend the (amended) complaint came after discovery had concluded" because "[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action") (quoting *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998)).

E. Count Nine: Fourth Amendment Unlawful Search of Plaintiff's Phone (¶¶ 293–296)

Plaintiff abandons Count Nine, alleging that Defendants violated Plaintiff's Fourth Amendment rights when they searched his phone. *See* ECF No. 137 at 9; ECF No. 138 at 14; ECF No. 139 at 15–16; ECF No. 140 at 14. Accordingly, the Court dismisses Count Nine, and the corresponding *Monell* liability claim, Count Ten.

F. Counts Two, Four, Six, Eight, and Ten: The *Monell* Claims

Plaintiff asserts *Monell* claims against the Town of Westport that correspond with Counts One, Three, Five, Seven, and Nine. As noted above, Count Ten, the *Monell* claim that corresponds with Count Nine, is dismissed alongside its underlying claim.

The Westport Defendants argue that because the underlying Counts (One, Three, Five, and Seven) do not sufficiently allege constitutional violations, the *Monell* claims (Counts Two, Four, Six, and Eight) necessarily fail. ECF No. 129-1 at 16. But, as explained above, the Court does not wholesale dismiss the underlying counts for failure to allege constitutional violations, leaving the Town of Westport's motion to dismiss devoid of relevant argument with respect to dismissal of the *Monell* claims. As a result, Plaintiff's *Monell* claims in Counts Two, Four, Six, and Eight may proceed.

G. Qualified Immunity

The Court separately rejects Defendant Nowinski's argument that he is entitled to qualified immunity as to all claims asserted against him.

When a defendant presents a qualified immunity defense on a motion to dismiss, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [the] claim, but also those that defeat the immunity defense." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). The Second Circuit has recognized that "a qualified immunity defense 'faces a formidable hurdle' at

the motion to dismiss stage 'and is usually not successful.'" *Id.* (quoting *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022)).

Here, the Court has concluded that Plaintiff has alleged plausible constitutional violations against Nowinski in Counts One, Three, and Five. Accordingly, insofar as Nowinski argues that there has been no violation of Plaintiff's constitutional rights—one prong of a qualified immunity analysis, *see Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)—his argument fails at this juncture with respect to those counts.

As for Nowinski's argument that he relied on the instructions of a superior officer and advice of Ornousky, an Assistant State's Attorney, to handcuff Plaintiff, Nowinski cites primarily to *Barboza v. D'Agata*, 151 F. Supp. 3d 363, 373 (S.D.N.Y. 2015). ECF No. 130-1 at 32. Nowinski ignores, however, that *Barboza* was decided on summary judgment, after full development of a factual record. There, the prosecutor "prompted" the officer to draft a charge and reviewed the charging instrument before it was filed, and told the officer that he and his "boss" approved of it. *Id.* Here, the SAC does not allege that Nowinski spoke directly to Ornousky; rather, Ornousky allegedly directed Vayan to forcibly seize Plaintiff if he did not surrender his phone. ECF No. 119 ¶¶ 115–16. The SAC also does not allege that Nowinski even knew of Ornousky's orders, much less that Ornousky was as clear in her authorization to seize Plaintiff as the prosecutor was in *Barboza*. Accordingly, Nowinski's argument concerning acting on a prosecutor's orders does not entitle him to qualified immunity at this juncture.

As for the remaining prong of the qualified immunity analysis—whether Nowinski violated Plaintiff's clearly established rights, *see Pearson*, 555 U.S. at 232, 236—Nowinski argues only that the temporary seizure of Plaintiff to prevent the destruction of evidence while warrants were obtained passes constitutional muster. ECF No. 130-1 at 34 (citing *Riley v. California*, 573 U.S.

373, 388 (2014)). But Plaintiff alleges much more than a mere temporary detention while warrants were obtained; he alleges he was handcuffed and held for hours, with no cause whatsoever. And *Riley* is inapposite: it addresses whether a warrant is necessary to search a cell phone. *See Riley*, 573 U.S. at 388–91 (concluding that the possibility of destruction of evidence does not justify a warrantless search of a cell phone).

Accordingly, on the factual record before the Court—consisting only of the SAC's allegations, which must be taken as true at this stage—the Court cannot find that Nowinski is entitled to qualified immunity. He remains free to raise this argument at the summary judgment stage.

H. Count Twelve: Fourteenth Amendment Due Process (SAC ¶¶ 305–10)

Finally, Plaintiff states a viable procedural due process claim[7] against Defendants Koskinas and Lauria for delaying acquisition of his pistol permit. "A Section 1983 claim to enforce the right to procedural due process is 'composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process.'" *Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427, 496 (E.D.N.Y. 2025) (quoting *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022)). Thus, the Court must determine whether a property or liberty interest is implicated and, if it is, "what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

[7] Plaintiff clarifies that he proceeds only on the basis of a procedural due process claim, so, the Court does not address the Westport Defendants' arguments with respect to substantive due process. *See* ECF No. 138 at 20 n.3.

*1. Liberty or Property Interest*

The Court assumes for purposes of its analysis that Plaintiff retains a liberty interest in his temporary pistol permit, a point that Koskinas and Laura do not dispute.[8]

Although Plaintiff's liberty interest suffices to proceed to the analysis of whether he was deprived of that interest without due process, the Court concludes that Plaintiff does not retain a property interest in the temporary pistol permit, and includes its analysis here to aid the parties as they proceed in litigation.

Due process rights attach to a property interest recognized by "an independent source such as state statutes or rules entitling the citizen to certain benefits." *Radwan*, 55 F.4th at 124–25 (quoting *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975)). Moreover, the Plaintiff must have a "legitimate claim of entitlement" to the benefit at issue. *Id.* at 125 (quoting *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Where, as here, the asserted interest is a government-issued license or permit, a legitimate claim of entitlement will be found to exist 'where, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504 (2d Cir. 2001)). Accordingly, the central question is "'whether the issuing authority lacks discretion to deny the permit,' *i.e.*, whether the authority 'is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met.'" *Id.* (quoting *Harlen Assocs.*, 273 F.3d at 504).

[8] A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). In *Kuck v. Danaher*, the Second Circuit recognized a plaintiff's liberty interest in his right to carry a firearm as provided in the Connecticut Constitution. *See* 600 F.3d 159, 163 (2d Cir. 2010) (citing Conn. Const. art. I § 15).

Connecticut state law confers local permitting authorities with discretion to deny a temporary pistol permit, specifically from individuals whom they believe are not "suitable" to receive such a permit. Conn. Gen. Stat. § 29-28(c)[9]; *see also Dwyer v. Farrell*, 193 Conn. 7, 12 (1984) (noting that the relevant state statutes "clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon") (cleaned up; citation omitted). As the Supreme Court has observed, this is substantively similar to state statutes conferring limited discretion that require "authorities [to] issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 13, 15, n.1 (2022). Although the Supreme Court stated in dicta in this footnote that Connecticut's statute operates like a "shall issue" jurisdiction, *id.* at n.1, the statute nonetheless confers discretion on state officials. *See Stratford Police Dep't v. Bd. of Firearms Permit Examiners*, 343 Conn. 62, 71 (2022) (collecting cases holding that the issuing authority has the discretion to deny a firearms permit to people deemed to be unsuitable). And although the discretion is relatively narrow, importantly, the threshold requirement here is not "objectively ascertainable criteria"—it is a judgment call. *See Ace Partners, LLC*, 883 F.3d at 195. Given this standard, Plaintiff cannot show that the "discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.* (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Accordingly, the Court finds that Plaintiff may not proceed on his due process claim on the basis of a property interest.

---

[9] This state statute has been amended several times. Plaintiff does not allege the specific date when he applied for his temporary pistol permit, but the Court surmises that it occurred after June 17, 2021, and before June 30, 2023. The versions of the statute that were in place between October 1, 2016, and May 31, 2022; June 1, 2022, to June 30, 2022; and July 1, 2022, to June 30, 2023, do not materially differ in any regard relevant to this case.

2. *Deprivation of Process*

Thus, the questions that remain are what process was due to the Plaintiff prior to denial of his pistol permit application, and whether that process was provided, based on the allegations of the SAC. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "[T]he state must use procedures that appropriately balance the interests involved in the deprivation," while keeping in mind that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 52 (2d Cir. 2018) (quoting *Mathews*, 424 U.S. at 333). The interests to be balanced are: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; and (3) the government's interest, including the possible burdens of alternative procedures." *Kuck*, 600 F.3d at 163 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005)). A delay "amounts to a due process violation only where it renders the prescribed procedures meaningless in relation to the private interest at stake." *Id.*

The tripartite process governing temporary pistol permit applications in the State of Connecticut is outlined in Connecticut General Statutes §§ 29-28, 29-28a, and 28-32b. First, an applicant submits a packet of statutorily defined materials to their local police department for a temporary permit. *See* Conn. Gen. Stat. § 29-28(b). Second, the chief of police must then approve or deny the application within eight weeks of receipt of "a sufficient application." *See* Conn. Gen. Stat. § 29-28a(b)(1). And third, within ninety days of receipt of denial of a temporary permit, the applicant may appeal to the Board of Firearm Permit Examiners. *See* Conn. Gen. Stat. § 29-32b(b).

Plaintiff alleges that after he submitted his application for a temporary pistol permit to the Westport Police Department (sometime after June 17, 2021), Defendant Koskinas "repeatedly

delayed" his permit application for "pretextual reasons." ECF No. 119 ¶¶ 211, 213–14. Plaintiff also states that Defendant Lauria accused Plaintiff of lying on his application form "without conducting any sort of investigation as to whether Malon made an accidental mistake or not," and that Koskinas and Lauria refused to accept a corrected application. *Id.* ¶¶ 216–17. He further alleges that he did not receive "any form of hearing or even a formal denial" of his application. *Id.* ¶ 307. All in all, "it took [Plaintiff] over a year to get his pistol permit" through an appeal process with the Board of Firearms Permit Examiners. *Id.* ¶ 218. On this basis, Plaintiff argues that procedural due process requires a pre-deprivation hearing, *i.e.*, a hearing prior to (effective) denial of the temporary pistol permit. *See* ECF No. 138 at 18–20.

Turning to the *Mathews* factors, the first factor concerns the private interest at stake. The Second Circuit concluded in *Kuck* that the liberty interest in a firearm permit is "significant," though "not overwhelming or absolute." 600 F.3d at 165.

As to the second factor, Plaintiff plausibly alleges there is a risk of erroneous denial in the manner in which Koskinas and Lauria proceeded with considering his application. For instance, Plaintiff alleges that Koskinas delayed adjudicating his application for what Plaintiff claims are pretextual reasons; that both of these Defendants refused to accept a renewed application to correct certain errors; and that there was never a formal denial of his application. *See* ECF No. 119 ¶¶ 215–19, 307. Taking these allegations as true, it appears that Koskinas and Lauria may not have complied with state law's explicit eight-week timeframe for taking action on a suitable application. Conn. Gen. Stat. § 29-28a(b)(1). On these allegations, the risk of erroneous deprivation of Plaintiff's liberty interest is high, and additional procedures, such as a pre-deprivation hearing, may well have been valuable to prevent the deprivation.

Moreover, due process ordinarily requires a hearing prior to the initial deprivation of a liberty or property interest. *See, e.g.*, *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299 (1981)). It is true that "where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . postdeprivation remedies might satisfy due process." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (rejecting suggestion that deprivation of a liberty interest always requires a pre-deprivation hearing). But here, Koskinas and Lauria do not even acknowledge in their briefing that Plaintiff has a liberty interest in the right to possess a firearm—despite Plaintiff explicitly raising this issue in his opposition brief. Perhaps as a consequence of this oversight, they make no argument that a pre-deprivation hearing would be unduly burdensome in proportion to that liberty interest. And while Koskinas and Lauria invoke case law holding that "summary administrative action" without a pre-deprivation hearing may be sufficient where a post-deprivation hearing is provided, *see* ECF No. 129-1 at 22, they misunderstand Plaintiff's claim. He alleges that Koskinas and Lauria delayed and refused to adjudicate his application for a temporary permit and, indeed, that there was *no* formal determination of his application. *See* ECF No. 119 ¶¶ 215–19, 307. Thus, the cases concerning summary administrative action to protect public health and safety are inapposite, as there was no such summary administrative action here pending the post-deprivation appeal to the Board of Firearm Permit Examiners.

The Court acknowledges that the governmental interest at stake—the third *Mathews* factor—is strong. Connecticut retains a "strong and compelling interest in ensuring that firearm permits are not issued to those 'lacking the essential character or temperament necessary to be entrusted with a weapon.'" *Kuck*, 600 F.3d at 168 (quoting *Dwyer*, 193 Conn. at 13). But Plaintiff alleges that Koskinas and Lauria delayed adjudication of his application for retaliatory reasons, as

opposed to legitimate ones. And these Defendants offer no argument about the burdens additional procedures, such as a pre-deprivation hearing, would pose.[10]

As described in *Kuck*, a delay "amounts to a due process violation . . . where it renders the prescribed procedures meaningless in relation to the private interest at stake." 600 F.3d at 163. Here, the statute sets forth a specific timeline for a police chief to act on a suitable application; taking Plaintiff's allegations as true, Koskinas' and Lauria's delay and inaction renders the statutory procedures meaningless, in relation to the "significant" liberty interest at issue. *Id.* at 165. Accordingly, after balancing the relevant factors, the Court concludes that Plaintiff has stated a plausible procedural due process claim against Koskinas and Lauria in Count Twelve.

I. Counts Thirteen through Fifteen: Abuse of Process, Battery, and False Imprisonment (SAC ¶¶ 311–329)

As the Court determined in *Malon I* with respect to the Westport Defendants and Nowinski, Plaintiff's state law claims are time-barred. *See Malon I*, 2025 WL 5083170, at *9–10. Although the State Defendants and Ornousky initially did not assert the statute of limitation defense, they now do so. Plaintiff concedes that his state law claims (except for his IIED claim with respect to Defendants Koskinas and Lauria) are time-barred and that the law-of-the-case doctrine mandates dismissal. *See* ECF No. 139 at 4; ECF No. 137 at 3. Accordingly, the Court dismisses Counts Thirteen, Fourteen, and Fifteen as to all Defendants against whom these counts are alleged.

[10] It may be the case that Koskinas and Lauria did not perceive Plaintiff's application to be "sufficient," such that it was not required to be adjudicated within eight weeks. *See* Conn. Gen. Stat. § 29-28a(b)(1). But such an argument would likely require examination of materials outside of the four corners of the SAC. Additionally, it can reasonably be inferred from Plaintiff's allegations that his application was sufficient. *See* ECF No. 119 ¶ 214 (alleging that Plaintiff met all requirements to purchase, possession, and carry firearms under federal and state law); *id.* ¶ 217 (alleging that Koskinas and Lauria refused to accept Plaintiff's second application, despite being required to do so by law).

J. Count Sixteen: Intentional Infliction of Emotional Distress ("IIED") (SAC ¶¶ 330–34)

Count Sixteen, alleging IIED, was originally asserted against Defendants Koskinas, Lauria, Ornousky, Vayan, Beauton, Clabby, Olivetti, and Mengacci. Plaintiff claims that, "[f]or all of their actions pled within this complaint," these Defendants intended to inflict emotional distress on him. But through his oppositions to the various motions to dismiss, Plaintiff has withdrawn this claim in part, except as to Defendants Koskinas and Lauria. *See* ECF No. 138 at 3, n.3; ECF No. 139 at 4; ECF No. 137 at 3. And he appears to have narrowed his IIED claim to focus on Koskinas' and Lauria's actions in failing to grant his application for a pistol permit. *See* ECF No. 138 at 20–21. In *Malon I*, the Court determined that the alleged harm related to the denial of the pistol permit was (at that time) ongoing, and therefore, Plaintiff's IIED claim was not time-barred with respect to that conduct. *Malon I,* 2025 WL 5083170 at *10. Koskinas and Lauria do not contest the Court's earlier finding. Their only argument as to the IIED claim is that the SAC impermissibly engages in group pleading with respect to this count. The Court disagrees, as the SAC alleges specific actions by Koskinas and Lauria to delay issuance of the pistol permit. ECF No. 119 ¶¶ 215–17.

Accordingly, Plaintiff may proceed on his IIED claim in Count Sixteen against Plaintiffs Koskinas and Lauria.

## IV. CONCLUSION

For the reasons discussed above, Defendants Frechette and Woods are dismissed from this suit. The Clerk is directed to terminate them from the docket.

Count One may proceed against Defendants Koskinas, Paulsson, Shaw, Nowinski, Heinmiller, Baker, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, Ornousky, and Lauria. Count Three may proceed against Defendants Paulsson, Shaw, Nowinski,

Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, and Ornousky, but is dismissed against Defendants Heinmiller and Baker. Count Five may proceed against Defendants Paulsson, Shaw, Nowinski, Heinmiller, Restieri, Sullivan, Field, Olivetti, Mengacci, Beauton, Vayan, Clabby, and Ornousky, but is dismissed against Defendant Baker. Count Seven may proceed against Defendants Restieri, Sullivan, Olivetti, and Mengacci, but is dismissed against Defendants Paulsson, Shaw, Beauton, Vayan, Clabby, Nowinski, Ornousky, Heimiller, Baker, and Field.

Counts Nine and Ten are dismissed against all Defendants.

Counts Two, Four, Six, and Eight may proceed against the Town of Westport.

Counts Thirteen through Fifteen are dismissed against all Defendants.

Count Sixteen may proceed against Defendants Koskinas and Lauria.

As discovery is scheduled to conclude on October 13, 2026, the Court resets the deadline for the parties to file motions for summary judgment and motions to exclude experts to **November 13, 2026.**

**SO ORDERED** at Hartford, Connecticut, this 14th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE